SCRUGHAM & MACKIE *vs.* CARTER & LABAGH.

*Replevin* does not lie against a sheriff who, by virtue of an execution against *one* of *several* partners, takes the *partnership* property and removes it to a place of safe deposit, at the suit of the other partners or those standing in their stead.

Nor will replevin lie, it seems, against a purchaser at a sale under such execution, who, after the purchase, reduces the property to possession.

The remedy of the other partners in such case, where there are unliquidated partnership accounts, is to obtain an order *staying* proceedings on the execution until an account be taken in equity

Where a defendant in replevin, who had taken property by virtue of an execution and was dispossessed of it by the writ of replevin, waived taking judgment for a return of the property, and took a verdict for the *amount* of his execution instead of the *value* of the property replevied, the court refused to set aside the verdict, on the presumption that the amount of the execution was less than the value of the property replevied.

Where the demand of the defendant is equal to or exceeds the value of the property replevied, the whole amount of the value of the property should be given to the defendant as damages—otherwise not; for if the value of the property exceeds his demand, and he takes a verdict for such value, he is liable to the plaintiff for the excess.

THIS was an action of *replevin,* tried at the New-York circuit in January, 1832, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was brought for three carriages taken by the defendants from the possession of the plaintiffs, by virtue of four executions issued on judgments in favor of *Carter* against one *Fletcher ; Labagh* was the officer in whose hands the executions had been placed, and *Carter* aided him in the execution of the process. The plaintiffs claimed the property under a voluntary *assignment* of it, and other property executed to them by *Richard B. Fletcher* and *Sarah Byrne,* on the 25th of May, 1829, for the benefit of their creditors. R. B. Fletcher and S. Byrne had, previous to the assignment, carried on the business of selling carriages at an establishment called a repository, in Walker street, N. Y., under the name of *Byrne & Co.* On the 1st August, 1829, Carter sued out two *warrants* from the marine court of the city of N. York against R. B. Fletcher and S. Byrne, on which Byrne was returned *not found* and

Fletcher *taken.* Fletcher was brought into court on the same day, and gave a confession in each suit for the sum of $100, on which judgments were entered against him and S. Byrne; and on the same day two other judgments were entered in the same court, against the same defendants, in favor of Carter—one for $100 and the other for $50—on the confession of Fletcher; it being stated in the record of the court that "Richard B. Fletcher *appeared in person and for Sarah Byrne.*" On these four judgments executions were issued, directed to a constable or marshal of the city of New-York, commanding him to cause to be made of the goods and chattels of *Richard B. Fletcher impleaded with Sarah Byrne,* the sum of, &c. which, &c.; and by virtue of those executions, the property in question was levied upon on the 8th January, 1830, at the repository in Walker street, and conveyed to a place in the *Bowery,* and there deposited ; from whence they were taken, by a deputy of the sheriff of New-York, by virtue of the writ of replevin, and delivered to the plaintiffs in this cause. It also appeared, on the trial of the cause, that on the first August, 1829, the property in question was levied upon by a deputy of the sheriff of New-York, by virtue of an execution in favor of a third person against *Richard B. Fletcher and Sarah Byrne,* issued on a judgment *confessed by Fletcher alone,* for the sum of $500. The property, at the time of the levy, was at the repository. When the deputy went there, the repository was closed ; but *Mackie,* one of the plaintiffs in this cause, having the key, opened it, and the deputy levied upon the property, subject to the assignment holden by Mackie and Scrugham, and also subject to an *injunction* then on the property. On account of such assignment and injunction the deputy did not remove the property, nor did he take a receipt for it, nor leave it with any one as his *bailee.* The assignment under which the plaintiffs claimed contained a clause that only such creditors of Fletcher and Byrne should participate in the benefit of the assignment, as should, on receiving their dividends, *release* the assignors from all balances remaining due by them ; and the defendants in this cause introduced much testimony to prove that both the *assignment* and the *judgment* under which the levy was made on the 1st August, 1829, were *fraudulent*

in fact; and, to controvert such proof, evidence was given on the part of the plaintiffs. It was proved that the amount due Carter, on his executions was $432,27. The judge submitted the question of *fraud* to the jury, and the defendants having waived their claim to judgment for the *return of the property*, and elected to take a verdict for the amount due on the executions, the jury found that the *assignment*, and the *judgment* on which the levy was made in August, 1829, were both fraudulent in fact, and found a verdict for the defendants, with $432,27 damages and six cents costs. The plaintiffs moved to set aside the verdict.

NEW-YORK,
May, 1834.

Scrugham
v.
Carter.

*S. A. Foot*, for the plaintiffs.

*S. P. Staples*, for the defendants.

*By the Court*, SAVAGE, Ch. J.   The assignment and judgment were both found fraudulent against creditors, and the evidence sustains the verdict.   The assignment is fraudulent upon its face, and is therefore void as against creditors; but it is valid against the assignors.   I consider the plaintiffs standing in the place of Byrne and Fletcher, and having their right to the property, and no other; and if the judgments in favor of Carter were judgments against both Byrne and Fletcher, there could be no question about the correctness of the decision of this cause at the circuit.   According to the decisions of this court, 1 Wendell, 311, 2 Caines' R. 254, and 9 Wendell, 439, the judgments entered against Fletcher, impleaded with Byrne, are valid judgments against Fletcher, but not against Byrne; they do not purport to be judgments against Byrne. Upon executions against one partner, the sheriff can sell the interest which such partner has in the partnership property, after the partnership debts are paid.   *In the matter of Smith,* 16 Johns. R. 106.   The officer certainly would have had a right to sell the mere interest of Fletcher, and the purchaser would have taken it subject to the claims of the partnership creditors and of the other partner. *In the matter of Smith,* above cited, it is said that the sheriff does not in such cases deliver possession.   He must, however, have the right to levy.   Each

NEW-YORK,
May, 1834.

Scrugham
v.
Carter.

partner is entitled to the possession of the partnership proper- ty; if one excludes the other, no action at law lies—the re- medy is in equity. So if the sheriff, by virtue of an execution against one of several partners, takes possession of the proper- ty, an action at law, I apprehend, does not lie against him. The court from which the execution issued would stay pro- ceedings upon it, to give time to have an account taken in equity; but if no such stay is obtained, the officer can sell the right of the partner who is the defendant in the execution. According to the rule in equity, the partnership accounts should all be liquidated before a sale on the execution; 2 Ves. & Bea. 300; 16 Johns. R. 107, n.; but if a sale should be made, and the purchaser should take the property, would he be a trespasser? or would he not be tenant in common with the other partner of the partnership property, subject to the claims of the creditors of the partnership? The sheriff or other officer, in making a levy and taking the property to a place of safe deposit, is surely not a trespasser; and that is all which it is necessary to decide in this case. The action of re- plevin does not lie in such a case.

This is a case in which a judgment of *retorno habendo* would be peculiarly proper, for it is by no means certain that any thing will be realized by the creditor; on the contrary, it is quite probable that the partnership effects are insufficient to pay the partnership debts. The statute provides that when- ever the defendant shall be entitled to a return, except in ca- ses of distress for rent, instead of taking judgment for such return, he may take judgment for the value of the property replevied. 2 R. S. 531, § 55. In this case a verdict was ta- ken for the amount of the executions in favor of Carter. As no objection was made at the circuit to this mode of assessing the defendants' damages, we may presume that the amount of the executions is less than the value of the property reple- vied. I can perceive no irregularity in this course. It is fair so to construe the statute as to give the full value of the pro- perty replevied, when the defendant's demand equals or ex- ceeds such value, and in such cases only. Had the value of the property replevied in this case been $500, a balance would remain in the hands of the defendant, which, unless claimed

by other creditors, would belong to the plaintiffs, and which <span style="float:right">NEW-YORK,<br>May, 1834.</span>
they might recover by an action if payment was refused. To
prevent circuity of action, if for no other reason, it is proper
that the defendant take judgment for no more than the amount
of his demand. From this view of the case, a new trial must
be denied ; though it must depend upon circumstances not now
before the court, whether the defendants can be permitted to
retain the amount of their verdict. If the property itself had
been returned, it would have been liable in the hands of the
defendants to the claims of the creditors of *Byrne* and *Fletcher*
for partnership debts ; and as the money is substituted for the
property, it is subject to the claims of the same creditors, who
no doubt will ask for a stay of proceedings, or file their bill in
equity, presenting their claims.

New trial denied.